IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD LIEBERMAN, SR. et al. | : | CIVIL ACTION |
| v. | : | |
| DAVID MARINO, et al. | : | NO. 06-cv-2745 |

MEMORANDUM RE: SUMMARY JUDGMENT

**Baylson, J.**                                                                                            **August 8, 2008**

Presently before this Court is Defendants' Motion for Summary Judgment in an action brought pursuant to 42 U.S.C. § 1983 and Pennsylvania state law.

## I. Background

### A. Factual Background

On the evening of June 24, 2004, Kris Lieberman (hereinafter "Decedent," "Mr. Lieberman") was acting in an unusual manner around his family. Decedent left his family's home on a motorcycle by himself. Sometime thereafter, Northampton County emergency services received two reports of a male yelling, screaming and running around in an open field. Officer David Marino was the first police officer to encounter Decedent in the field. Officer Marino observed Decedent spinning on his back in a "crab-like" position, naked from the waist down and appearing to be "whacked out." (Statements of Undisputed Facts, ¶¶ 9, 10). Decedent was yelling obscenities, pulling up clumps of grass and throwing them in the air, and making references to heaven and God. Officer Marino called on his radio for an ambulance. Shortly thereafter, Officer Sean Stuber arrived at the scene. (Statements of Undisputed Facts, ¶¶ 11, 12, 15).

Many of the alleged facts from this point until Mr. Lieberman's death are only known from the testimony of the police officers. According to Officers Marino and Stuber,[1] they approached Decedent and verbally commanded him to calm down. Officer Stuber and Decedent recognized each other (Statements of Undisputed Facts ¶¶ 17, 18). Decedent allegedly shouted to Officer Stuber, "I'm going to kill you, Sean." (Statements of Undisputed Facts, ¶ 21; Exhibit C, p. 119). Decedent also allegedly threatened to kill Officer Marino. (Statements of Undisputed Facts ¶¶ 22, 25). At some point after these threats, Officer Marino deployed the taser device he was carrying. (Statements of Undisputed Facts ¶ 27). Officer Stuber approached Decedent in an attempt to control him and handcuff him (Statements of Undisputed Facts ¶ 28). Officer Stuber had difficulty handcuffing Decedent while he was being tasered; it is unclear whether this was due to the tasering itself or whether Decedent was resisting Officer Stuber's efforts. (Statements of Undisputed Facts ¶ 30). Plaintiffs allege that Officer Marino fired 11 taser shots at Decedent in approximately one minute. (Pls's Statement of Undisputed Facts ¶ 32).[2] After the taser was deployed, Officer Stuber was able to secure the handcuffs on Decedent's wrists. It was at this time that Officer Stuber saw Officer Randy Knauss approaching the scene from across the field. (Statements of Undisputed Facts ¶¶ 33-35). Officers Marino and Knauss knelt on either side of

---

[1] Plaintiffs admit the remaining facts only to the extent that Officers Marino and Stuber testified to such facts in their depositions. Plaintiffs contend the judgment of Defendants' credibility is solely the province of the jury, after hearing all of the evidence.

[2] Officer Marino testified that he deployed the Taser three times, and held the trigger down on the third shot because the Taser was not producing the desired effects of overcoming Mr. Lieberman's resistance. (Def's Mot. for Summary Judgment, Ex. C., pp. 175-199).

Decedent and put pressure on his shoulder area[3] to keep him face down. Decedent allegedly continued to yell obscenities and kick while lying handcuffed on the ground. (Statements of Undisputed Facts ¶ 38). At some point, Decedent went limp and his eyes rolled back into his head (Statements of Undisputed Facts ¶ 39). According to the officers, they immediately began resuscitation measures. (Def.'s Statement of Undisputed Facts ¶ 40). The officers obtained and applied an automated defilbrillator, which assessed the Decedent's heart rhythms and reported "no shock advised." Emergency services arrived at the scene, and transported Mr. Lieberman to Easton Hospital, where Decedent was declared dead. (Statements of Undisputed Facts ¶ ¶ 41-43).

### B. Procedural History

Plaintiffs filed their Complaint (Doc. No. 1) on June 23, 2006. Defendants filed various Motions to Dismiss (Doc. No. 11, 14), which this Court granted in part and denied in part (Doc. No. 24). Defendants filed a Motion for Summary Judgment (Doc. No. 46). Plaintiffs filed a Response (Doc. No. 54) to Defendants' Motion. Defendants filed a Reply to Plaintiffs' Response (Doc. No. 56). Upon request by this Court, Defendants filed a Statement of Undisputed Facts (Doc. No. 57), and Plaintiffs filed an Answer to Defendants' Statement of Undisputed Facts (Doc. No. 58). Oral argument was held on August 6, 2008.

## II. Contentions of the Parties

Defendants contend that Officers Marino, Stuber and Knauss (hereinafter collectively "the Officers") are entitled to the defense of qualified immunity to Plaintiffs' Fourth Amendment

---

[3] Plaintiffs contend Officers Marino and Knauss placed pressure on the Decedent's shoulder area; Defendants state that Officers Marino and Knauss placed pressure on Decedent's triceps.

claims with regard to excessive force. They argue that the Officers did not violate Mr. Lieberman's civil rights - indeed, Officer Knauss was not even at the scene when the Taser was deployed and thus could not have violated Mr. Lieberman's Fourth Amendment rights. In the alternative, even if the Court were to find that Mr. Lieberman's constitutional rights had been violated, Defendants argue that the Officers reasonably believed that their actions were constitutionally permissible.

Defendants further contend that Plaintiffs have failed to establish a viable claim under Monell v. Dept. of Social Services of New York City, 436 U.S. 658 (1978). They argue that Bushkill Township cannot be found liable for violating Mr. Lieberman's civil rights because there was no underlying constitutional violation by the Officers, Plaintiffs have failed to demonstrate a claim of municipal liability against the Township, and Chief Stanley Coopersmith is entitled to summary judgment as a matter of law, as Plaintiffs have not met the standard for supervisory liability.

With respect to Plaintiffs' state law claim for intentional infliction of emotional distress, Defendants contend that Plaintiffs have failed to produce any evidence of a physical manifestation of the alleged emotional distress or to support an award of damages for the alleged intentional infliction of emotional distress. Finally, Defendants argue that Mr. Lieberman's substantive due process rights to medical care were not violated, and Plaintiffs have failed to produce expert testimony linking any action of the Defendants to Mr. Lieberman's death.

In their response, Plaintiffs argue that Officers Marino, Stuber and Knauss are not entitled to the defense of qualified immunity to the excessive force claims, as there are disputed objective facts as to the Officers' conduct at the scene of Mr. Lieberman's death. Plaintiffs contend there

is sufficient evidence for a jury to find the Township liable for the Monell claims, and to find Chief Coopersmith liable for the supervisory liability claims. Plaintiffs contend they have provided sufficient evidence to support their claims of intentional infliction of emotional distress and to show that Defendants violated Mr. Lieberman's substantive due process rights and caused Mr. Lieberman's death.

In their reply, Defendants contend that Plaintiffs have shown no evidence that would allow their claims to survive summary judgment. Defendants further argue that all Monell claims against the Township must be dismissed, and there is no evidence to support a claim against Stanley Coopersmith or Randy Knauss. On a procedural note, Defendants contend that the affidavit of Mario Orlando (Plaintiffs' Exhibit E) should not be considered by this Court as it would be inadmissible hearsay evidence at trial, and because Mario Orlando was never identified by Plaintiffs as a potential witness. In the alternative, even if the Court does consider Mr. Orlando's affidavit, Defendants contend that his statements are irrelevant to Plaintiffs' claims. On a second procedural note, Defendants argue this Court cannot consider the expert report of John Shane, M.D., as it is not signed and is unsworn. In the alternative, even if the Court does consider Dr. Shane's report, Defendants argue that Dr. Shane's opinion fails to meet the admissibility standards set forth in Daubert v. Merrell Dow, 509 U.S. 579 (1993), as Dr. Shane's opinion is beyond the scope of his expertise as a pathologist and is unreliable. Finally, Defendants contend that Plaintiffs' arguments concerning Mr. Lieberman's due process rights are misplaced and contrary to established case law.

### III. Legal Standard

#### A. Jurisdiction

This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction of Plaintiffs' state law claims to 28 U.S.C. § 1367.

B.  **Standard of Review**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Under Rule 56, the

Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

IV. **Discussion**

    A. **Plaintiffs' Claim of Excessive Force**

As the Court advised counsel at the conclusion of the oral argument, the facts show a prima facie case of excessive force, if only because the incident resulted in the death of Mr. Lieberman. The coroner's report is of probative value to both parties, and it will be up to the jury to determine whether the taser and other actions by the police officers were a cause of death. The jury may conclude that the cocaine ingested itself, and/or cardiac factors, resulted in the death, to the exclusion of any police conduct. However, the Court cannot make this determination as a matter of law. Since the incident resulted in the death of an individual, the Court cannot say, as a matter of law, that there was no excessive force.

In the present case, the police did not witness criminal conduct by Mr. Lieberman. Although his conduct was bizarre and perhaps dangerous, and police are entitled to take appropriate action in such situations, the contention that his death may have resulted from, inter alia, his interaction with the police officers, including the taser, does not allow the Court to dismiss the claim of excessive force as a matter of law.

    B. **The Officers and Qualified Immunity**

"Qualified immunity is an 'entitlement not to stand trial or face the other burdens of litigation.' The privilege is 'an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.'" Saucier v. Katz, 533 U.S. 194, 200-201 (2001) (internal quotations omitted). When a defendant

asserts a defense of qualified immunity in a motion for summary judgment, as Defendants have in the present case, the plaintiff bears the initial burden of showing that the defendant's conduct "violated some clearly established statutory or constitutional right." Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997) (internal citations omitted). It is only after the plaintiff has met this initial burden that defendant then must "demonstrate that no genuine issue of material fact remains as to the 'objective reasonableness' of the defendant's belief in the lawfulness of his actions." Id.

In order to establish a Section 1983 claim, a plaintiff "must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under color of state law." Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995) (internal quotations omitted). Under Saucier v. Katz, 533 U.S. 194 (2001), a court analyzing a claim of qualified immunity must first ask the "threshold" question: whether the facts alleged show that the official's conduct violated a constitutional right. Id. at 201. If the plaintiff fails to show a constitutional violation, then the state actor is entitled to qualified immunity. Bennett v. Murphy, 274 F.3d 133, 136-37 (3d Cir. 2002). If the plaintiff's allegations establish the violation of a constitutional right, however, the violation is necessarily actionable and the court can then proceed to the second inquiry in the Saucier analysis: whether the right was "clearly established." Saucier, supra. At this step of the inquiry, the analysis is based "solely upon the law. If it would not have been clear to a reasonable [state actor] what the law required under the facts alleged, he is entitled to qualified immunity. If the requirements of the law would have been clear, the [state actor] must stand trial." Bennett, 274 F.3d at 136-37.

This Court realizes the importance of an early resolution of the issue of qualified immunity; however, it may not always be possible to resolve the issue of qualified immunity at summary judgment. In <u>Curley v. Klem</u>, 298 F.3d 271 (3d Cir. 2002), the district court had granted summary judgment in a Section 1983 claim in favor of a state trooper on the basis of qualified immunity. The Third Circuit reversed in part, finding that genuine issues of material fact precluded summary judgment on the issue of the trooper's qualified immunity from liability: "the imperative to decide qualified immunity issues early in the litigation is in tension with the reality that factual disputes often need to be resolved before determining whether the defendant's conduct violated a clearly established constitutional right." <u>Id.</u> at 278. "A decision on qualified immunity . . . 'will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis.'" <u>Wright v. City of Philadelphia</u>, 409 F.3d 595, 599 (3d Cir. 2005) (quoting <u>Curley v. Klem</u>, 298 F.3d at 278).

As in <u>Curley</u>, there are factual disputes that need to be resolved in the present case before it can be determined whether the officers' conduct violated Mr. Lieberman's clearly established constitutional right. The parties disagree about how many times the officer tasered Mr. Lieberman, and about the manner in which the police treated him during the incident. Indeed, most of the key actions and events that are central to the present case are only known through the accounts of the officers. The jury's judgment of their credibility will result in the determination of what happened, and the events of that day are central to the analysis of whether Mr. Lieberman's Fourth Amendment and substantive due process constitutional rights were violated.[4]

---

[4] In <u>Reilly v. City of Atlantic County</u>, No. 06-2591, 06-2734 (3d Cir. July 1, 2008), the Third Circuit reversed the district court's order and found that the state actors were indeed entitled to qualified immunity at the summary judgment stage with respect to Plaintiff's

The credibility of their testimony is not for this Court to determine, but for a jury to decide. Anderson v. Liberty Lobby, 477 U.S. at 255. And, while concerns regarding the credibility of witnesses cannot defeat summary judgment alone, Plaintiffs in the present case have presented evidence and inferences that would allow a reasonable juror to rule in their favor. For instance, Exhibit D attached to Plaintiffs' Response includes the Taser log, showing how many times the Taser was used during the incident. The log clearly shows that 11 shocks were dispatched within one minute, as opposed to the three shocks that Officer Marino remembers. (Pls.' Resp. Doc. No. 54, Ex. D).

Defendants cited two cases, Bornstead v. Honeybrook Twp., 211 Fed. Appx. 118 (3d Cir. 2007) and Sanders v. City of Fresno, 551 F.Supp. 2d 1149 (E.D.Ca. 2008), a case involving use of a taser-like device. Both cases upheld a defense of qualified immunity, holding that the facts did not constitute excessive force or violate any constitutional rights. Both cases are distinguishable because the plaintiffs had committed crimes and the overall circumstances were much different. Although there is no holding that the use of a taser violates a constitutional right, that specific issue does not control the broader excessive force issue.

For these reasons, the officers are not entitled to qualified immunity at this time, and summary judgment will be denied as to these claims, without prejudice.

---

Fourteenth Amendment procedural due process claim. In that case, the district court had concluded that questions of fact remained that, if proven in favor of Plaintiff, would show a procedural due process violation. The Third Circuit disagreed, reasoning that the disputed issue of fact identified by the district court was immaterial to the constitutional analysis. Reilly is distinguishable from the present case. The disputed issues of fact here are at the heart of both the case and the analysis of whether Mr. Lieberman's constitutional rights were violated, and thus are material to the qualified immunity analysis.

At the conclusion of the oral argument, the Court advised that it would hold under advisement the remainder of the Motion, and gave counsel opportunity to submit further briefs.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD LIEBERMAN, SR. et al. | : | CIVIL ACTION |
| v. | : | |
| DAVID MARINO, et al. | : | NO. 06-cv-2745 |

**ORDER**

AND NOW, this 8th day of August, 2008, for the reasons stated in the foregoing Memorandum, it is hereby ORDERED as follows:

1. Defendants' Motion for Summary Judgment, to the extent it seeks to dismiss the claims of excessive force as unsubstantiated as a matter of law, is DENIED.

2. The claims of qualified immunity by Officers Marino and Stuber are DENIED without prejudice and may be renewed at trial, at which time the Court may submit special interrogatories to the jury preliminary to a conclusion about qualified immunity.

3. By agreement, all claims against Officer Knauss are DISMISSED and he is no longer a party in this case.

4. As to the Monell claims against Bushkill Township, the Court will take these under advisement. The Court reviewed the evidence at oral argument. It appears that Officer Marino joined the police force in 2003 and received taser training as part of his initial on-the-job training. This incident occurred in 2004. Therefore, it does not appear relevant as to causation that Officer Marino did not receive annual training thereafter. Plaintiffs are given leave to present additional authorities showing that the facts of record entitle Plaintiffs to a jury trial against Bushkill Township on the Monell claim.

5. Although the Court does not now rule, summary judgment may be granted in favor of Police Chief Coopersmith unless Plaintiffs are able to come forward with case law showing that the factual record is sufficient to require Chief Coopersmith to stand trial.

6. The Court will allow Defendants to take the deposition of Mr. Orlando and Dr. Shane now that his report has been signed and verified under oath.

7. Supplemental briefs on behalf of Plaintiffs and all <u>Daubert</u> motions shall be filed within fourteen (14) days. The opposing party can make a response within seven (7) days thereafter. (These deadlines are earlier than discussed at the argument).

8. It appears that no expert depositions were taken in this case. After discussion with counsel, Plaintiffs' reasons for not taking expert depositions are not totally persuasive, but in the interest of justice and since the Defendants will take depositions of the Plaintiffs' expert Dr. Shane, the Court will allow Plaintiffs' counsel up to six (6) hours of depositions of any three (3) of Defendants' experts, to be chosen by Plaintiffs. These depositions will be taken within the next thirty (30) days.

9. A final pretrial conference will be held on November 10, 2008 at 3:30 p.m. in Courtroom 3A.

10. This case is now scheduled for trial to begin on December 2, 2008.

11. Magistrate Judge Strawbridge will schedule a settlement conference.

BY THE COURT:

s/Michael M. Baylson

Michael M. Baylson, U.S.D.J.

O:\CIVIL\06-2745 Lieberman v. Marino\Lieberman v. Marino Summary Judgment.wpd