**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


RICHARD LIEBERMAN, SR. et al.                    :          CIVIL ACTION


          v.                                                          :


DAVID MARINO, et al.                                    :          NO. 06-cv-2745


**MEMORANDUM RE: MONELL CLAIMS**

Baylson, J.                                                          **September 15, 2008**

          Following oral argument on August 6, 2008, this Court made several rulings on the

record, and then issued an Order dated August 29, 2008 (Doc. No. 71), which granted in part and

denied in part Defendants' Motion for Summary Judgment.  This memorandum is being filed to

explain those rulings, particularly as to the liability of Bushkill Township and Chief of Police

Stan Coopersmith; as a result of these rulings, Bushkill Township is no longer a party in this

case, but Chief Coopersmith remains a party on Plaintiffs' claim of intentional infliction of

emotional distress.

          I.          Background

          The factual history of this case can be found in this Court's Order and Memorandum of

August 8, 2008 (Doc. No. 63).  In brief, relatives of Kris Lieberman (hereinafter "Decedent" or

"Mr. Lieberman") bring suit against various defendants, including Bushkill Township, in

connection with the death of Mr. Lieberman on June 24, 2004.  Defendants filed a Motion for

Summary Judgment.  (Doc. No. 46).  Plaintiffs filed a Response (Doc. No. 54) to Defendants'

Motion.  Defendants filed a Reply to Plaintiffs' Response (Doc. No. 56).  Oral argument was

held on August 6, 2008, and some issues were addressed by the Court in a later Memorandum

and Order.  (Doc. No. 63).  Plaintiffs submitted supplemental briefing on the <u>Monell</u> claims

(Doc. No. 68).  Defendants submitted a supplemental brief in response.  (Doc. No. 70).

<u>II.      Parties Contentions</u>

Defendants contend that Plaintiffs have failed to establish a viable claim under <u>Monell v.

Dept. of Social Services of New York City</u>, 436 U.S. 658 (1978).  They argue that Bushkill

Township cannot be held liable for violating Mr. Lieberman's civil rights because there was no

underlying constitutional violation by the Township's police officers.  They further contend that

in the alternative, if Mr. Lieberman's rights were violated, Plaintiffs' <u>Monell</u> claims would still

fail.  Defendants argue that Officers Marino and Stuber responded to the incident as they were

trained to do by the Department's Taser certification program and by the Taser manual, and that

Plaintiffs have failed to show any deliberate indifference on the part of the Township.

Plaintiffs argue that there is sufficient evidence for a jury to find the Township liable

under <u>Monell</u>.  Plaintiffs base their <u>Monell</u> claims on the alleged custom of the Township to

disregard its stated policies regarding the use of the Taser and the alleged failure to train its

officers.  Plaintiffs argue that the Township's policies were ineffective and ignored, as the stated

purpose of the policy is to improve a hostile situation, and that the Taser should only be used

when alternative measures have been taken or are reasonably likely to fail.  Plaintiffs place

particular emphasis on Officer Marino's lack of knowledge concerning how many volts of

electricity are produced from a Taser when it is fired, and find fault with the Police Department's

annual training program and the lack of discipline imposed by the Department related to the

incident involving Mr. Lieberman.  Plaintiffs argue that all of the above establish deliberate indifference on the part of Bushkill Township under Monell.

In their Reply, Defendants argue that Plaintiffs offer opinions and conjecture, but no proof of establishing a viable claim under Monell, and contend that Plaintiffs present no admissible evidence that the lack of any policy (or failure to enforce a policy) caused the alleged constitutional violation resulting in the death of Mr. Lieberman.

In their supplemental briefing, Plaintiffs contend that they have provided enough evidence for a reasonable person to impute constructive knowledge of the Township's lack of adequate training and supervision, and that this lack of adequate training caused Mr. Lieberman's death.  In response, Defendants argue that the Court must be guided by the U.S. Supreme Court's decision in Board of County Commissioners of Bryan City v. Brown, 520 U.S. 397 (1997), which they argue sets out a standard that is highly specific and must be rigorously applied. Defendants further contend that Plaintiffs have not shown that the alleged "failure to train" was a direct cause of Mr. Lieberman's death, nor have they shown that the Township's "failure to train" was deliberately indifferent to the constitutional rights of Mr. Lieberman.

III.    Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  A factual dispute is

"material" if it might affect the outcome of the case under governing law.  Id. _____

_____A party seeking summary judgment always bears the initial responsibility for informing

the district court of the basis for its motion and identifying those portions of the record that it

believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett,

477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  Where the non-moving party bears

the burden of proof on a particular issue at trial, the moving party's initial burden can be met

simply by "pointing out to the district court that there is an absence of evidence to support the

non-moving party's case."  Id. at 325.  After the moving party has met its initial burden, "the

adverse party's response, by affidavits or as otherwise provided in this rule, must set forth

specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e).  Summary

judgment is appropriate if the non-moving party fails to rebut by making a factual showing

"sufficient to establish the existence of an element essential to that party's case, and on which

that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  Under Rule 56, the

Court must view the evidence presented on the motion in the light most favorable to the

opposing party.  Anderson, 477 U.S. at 255.

        IV.     Discussion

        A municipality may not be held liable for the acts of its employees on a theory of

respondeat superior or vicarious liability.  Monell, 436 U.S. 658, 692-93.  It is well-settled that to

establish a violation of 42 U.S.C. § 1983 by a municipality, a plaintiff must show that the alleged

misconduct was caused by an official government custom or policy, or a "failure to train."

Monell, 436 U.S. at 694; City of Canton v. Harris, 489 U.S. 378, 387-88 (1989).  Municipal

custom or policy can be demonstrated either by reference to express, codified policy or by

evidence that a particular practice, although not authorized by law, is so permanent and well-settled that it constitutes law.  Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996). Further, plaintiffs must demonstrate causation, as a municipality can be liable under Section 1983 only where its policies are "the 'moving force' behind the injury alleged."  Berg v. County of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000), quoting Board of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 404 (1997).  If the policy or custom does not facially violate federal law, causation can be established only by showing that "the municipal action was taken with 'deliberate indifference' to its known or obvious consequences."  Id.

Additionally, for liability to attach under a failure-to-train theory, Defendants' failure to train their employees must "reflect a 'deliberate' or 'conscious' choice by [a] municipality" such that one could call it a policy or custom.  City of Canton, 489 U.S. at 388-89; Grazier v. City of Philadelphia, 328 F.3d 120, 124 (3d Cir. 2003).  This standard will not be satisfied by a mere allegation that a training program represents a policy for which the city is responsible, but rather, the focus must be on whether the program is adequate to the tasks the particular employees must perform.  City of Canton, 489 U.S. at 389-90.  Moreover, such liability arises "only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants."  Id.

In the present case, Plaintiffs rely on two theories: (1) it was the custom of the Bushkill Township Police Department to disregard its stated policies with respect to Taser use, and (2) the Department failed to adequately train and supervise its officers, particularly with respect to the use of a Taser.  Each will be discussed in turn.

    1.    Custom

In their Complaint, Plaintiffs allege that Bushkill Township had a policy, custom or practice of failing to, or inadequately, training, supervising and/or disciplining, police officers with respect but not limited to violating the constitutional rights of Decedent and other persons within the jurisdiction, posing a threat of death or serious bodily injury to persons such as Decedent when such a threat was not a reasonable response, failing to have public services or equipment such as emergency medical services and devices to save a human life, and failing to train Defendants to the known dangers created by the use of the Taser.  (Compl. at ¶ 91).

In the present case, Bushkill Township has an internal policy setting forth guidelines for the use of tasers by their police officers.  (See Pls.' Resp. to Defs.' Mot., Ex. H).  The Court must look to the substance of those policies, however, and not simply rely on the fact that they exist. See Beck v. City of Pittsburgh, 89 F.3d 966 (3d Cir. 1996) (noting that the mere existence of developed procedures does not withstand a Section 1983 inquiry, and it is the substance of those procedures which must be examined).

The Department's policy requires that officers be recertified with respect to taser use on an annual basis.  (See Pls.' Resp., Ex. H)).  Although Officer Marino testified that the Department requires such recertification, he then testified that he had only been trained twice. (See Defs.' Mot. for Summ. J., Ex. C, pp. 10, 107).  When asked the question, "So you say there is a policy but apparently it's not being followed, is that right?," Officer Marino responded, "Yes."  (See id. at p. 108).  Thus, Plaintiffs repeatedly argue that since Officer Marino admitted the taser policy was not being followed, he created an issue of fact concerning Monell liability that must be decided by a jury.

This argument is flawed.  While Officer Marino's admission that the Department has not always followed its own policy over the years is noteworthy, his testimony must be put into the context of the case at hand.  Indeed, whether the Township followed its policy in the years <u>after</u> the incident is not the issue presently before this Court; the Court must only concern itself with whether the Township's policies were followed in relation to the incident involving Mr. Lieberman.  As the Township's policy does not facially violate federal law, the Court must determine whether the incident was caused by deliberate indifference on the part of the Township.

Pursuant to the Township's policy, Officer Marino was properly trained in the year leading up to the incident.  Indeed, Officer Marino underwent the required Taser training on December 22, 2003, only six months prior to the incident.  (<u>See</u> Defs.' Supplemental Br., Exs. F and G).  Officer Randy Knauss was trained in Taser use on this same day, and Officer Stuber was trained not only in Taser use, but was certified to train other members of the Department with regards to Taser certification.  (<u>See</u> Defs.' Supplemental Br., Ex. F; Defs.' Mot. for Summ. J., Ex. B, pp. 82-87)  Plaintiffs have failed to show that this training - which was in accordance with the Department's policy - caused Mr. Lieberman's death.  And while Plaintiffs rely on Officer Marino's statements that training was not completed on an annual basis after Mr. Lieberman's death, this is a distortion of the issue.  The training (or lack thereof) that occurred <u>after</u> Mr. Lieberman's death simply could not have caused Mr. Lieberman's death or infringed on any of his constitutional rights.  It is the custom and training that occurred <u>prior</u> to his death that is of importance to this case, and it is undisputed that this training occurred in accordance with

Department policy.  Plaintiffs have failed to show that a jury could conclude that the Township had a custom of allowing its officers to not follow this policy.

While they claim to "detail" the Township's custom in their briefing, Plaintiffs did not provide any deposition testimony or direct evidence to show deliberate indifference on the part of the Township.  Plaintiffs' generalizations, with no evidence to support them, are insufficient to prove the Township's alleged deliberate indifference and survive summary judgment.  See e.g. Williams v. Lane, 2007 WL 756731, *7 (E.D.Pa. Mar. 8, 2007) (granting summary judgment because the plaintiff failed to raise a genuine issue of fact as to whether a causal connection exists between any policies, procedures or failure to train and the plaintiff's injuries).  Plaintiffs have failed to establish that the Township's custom caused the injury alleged.

As such, summary judgment was granted with respect to Plaintiffs' Monell claim based on an official government custom.

2.      Failure-to-Train

Under a failure-to-train theory, Plaintiffs are required to show that Bushkill Township's Taser training procedures were inadequate, and that the inadequacy was due to deliberate indifference on the part of Bushkill Township toward the constitutional rights of its citizens. City of Canton, 489 U.S. at 387-88.  In explaining its conception of "deliberate indifference," the Supreme Court stated:

> The issue in a case like this one . . . is whether that training program is adequate; and if it is not, the question becomes whether such inadequate training can justifiably be said to represent 'city policy.'  It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees.  But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so

likely to result in the violation of constitutional rights, that the policy-makers of the city
can reasonably be said to have been deliberately indifferent to the need.

City of Canton at 390.  The Supreme Court elaborated:

> That a particular officer may be unsatisfactorily trained will not alone suffice to fasten
> liability on the city, for the officer's shortcomings may have resulted from factors other
> than a faulty training program.  It may be, for example, that an otherwise sound program
> has occasionally been negligently administered.  Neither will it suffice to prove that an
> injury or accident could have been avoided if an officer had had better or more training,
> sufficient to equip him to avoid the particular injury-causing conduct.  Such a claim could
> be made about almost any encounter resulting in injury, yet not condemn the adequacy of
> the program to enable officers to respond properly to the usual and recurring situations
> with which they must deal.  And plainly, adequately trained officers occasionally make
> mistakes; the fact that they do so says little about the training program or the legal basis
> for holding the city liable.

Id. at 390-91.

In the present case, Plaintiffs contend that Bushkill Township failed to properly train its

officers.  In support of this theory, Plaintiffs offer the fact that Officer Marino did not know how

many volts of electricity were being shot out of the Taser at Mr. Lieberman, and the fact that he

was not annually retrained as required by the Department's policy.  Plaintiffs also rely on the fact

that in an incident involving Taser use against another citizen, Defendant Marino did not know

how many times the Taser had been deployed.  (Pls.'s Resp., at 16, 18).

Plaintiffs have failed to make the showing required by Canton.  As discussed above,

Officer Marino was trained six months prior to the incident, in line with the Department's annual

retraining policy.  Furthermore, an absence of knowledge as to how many electric volts are shot

out of a Taser gun in no way proves that Bushkill Township failed to train its officers.  It can be

assumed that police officers and state employees around the country do not know every scientific

detail about the intricacies of their jobs.  The fact that Officer Marino does not know the exact

voltage of the Taser gun does not necessarily mean that the Township failed to train him. Moreover, Plaintiffs have provided no direct evidence or deposition testimony showing that Officer Marino <u>should</u> have known such information.  See <u>Joines v. Township of Ridley</u>, 229 Fed. Appx. 161, 164 (3d Cir. July 3, 2007) (affirming district court's grant of summary judgment on a <u>Monell</u> claim, noting that "[d]eliberate indifference is not established simply because better policies could have been enacted") (internal citations omitted).  While Mr. Lieberman's death is tragic, the fact that he died in and of itself is not enough to show that the Township failed to train its officers properly.  Under <u>City of Canton</u>, the focus of the Township's training program appears to have been adequate to the tasks that its officers needed to perform.

Plaintiffs rely heavily on the fact that Officer Marino did not know how many times a Taser gun had been deployed in a later unrelated incident.  This argument is misguided.  As Officer Marino testified in his deposition, he played no role in this other incident.  He was not present, and thus he could only recite his secondhand knowledge about the events that occurred. (Defs.'s Mot. for Summ. J., Ex. C, p. 131).  Officer Marino's lack of knowledge about an incident for which he was neither present nor responsible certainly does not show a failure to train on the part of Bushkill Township.

In a recent case, the Third Circuit affirmed a district court's grant of judgment as a matter of law on a plaintiff's <u>Monell</u> claim.  The Third Circuit reasoned: "Neither the testimony that [the plaintiff] introduced nor any other evidence admitted at trial gave the jury reason to believe that [the defendant township] had an inadequate training program or a municipal policy of negligent supervision which rises to the level of deliberate indifference required for section 1983 liability."  <u>Trueman v. City of Upper Chichester</u>, 2008 WL 3845373, *8 (3d Cir. Aug. 19, 2008).

-10-

In the present case, Plaintiffs have similarly failed to present any evidence that, at trial, would give a jury reason to believe that Bushkill Township's training program rises to the level of deliberate indifference.

For these reasons, summary judgment was granted with respect to Plaintiffs' <u>Monell</u> claim based on a failure-to-train theory. Bushkill Township will be terminated as a party in this case.

### 3.    <u>Chief Coopersmith and Supervisory Liability</u>

The Court of Appeals for the Third Circuit has set out a specific test for the sufficiency of the evidence to support a claim of supervisory liability. The plaintiff must (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure, created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure. <u>Brown v. Muhlenberg Twp.</u>, 269 F.3d 205, 216 (3d Cir. 2001). The supervisor need not be personally involved (a.k.a. personally present) during the injurious incidents in order to be held liable. An individual can be held liable for Section 1983 liability if he personally "participated in violating [another's] rights, or . . . directed others to violate them or . . . had knowledge of and acquiesced in his subordinates' violations." <u>Baker v. Monroe Township</u>, 50 F.3d 1186, 1190-91 (3d Cir. 1995); <u>Walker v. North Wales Borough</u>, 395 F.Supp.2d 219 (E.D.Pa. 2005). The Court emphasized that "'it is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did' . . . . Rather, the

plaintiff must identify specific acts or omissions of the supervisor that evidence deliberate indifference and persuade the court that there is a 'relationship between the 'identified deficiency' and the 'ultimate injury.'" <u>Brown v. Muhlenberg Twp.</u>, 269 F.3d at 216 (internal citations omitted).

In their Complaint, Plaintiffs identify Chief Coopersmith as the person "responsible for the formulation and/or implementation of practices, policies, and procedures, as well as the day to day operation and overseeing and command and control of the Police Department."  (Compl. at ¶ 6).  Plaintiffs mention that Chief Coopersmith did not conduct any immediate investigation into the incident himself, but decided it should be conducted by the Pennsylvania State Police, whom he contacted on the very day of the incident.  (Compl. at ¶ ¶ 72-73).  Plaintiffs believe that Chief Coopersmith should have filled any investigative void with his own inquiry into the matter (Compl. at ¶ 78).  Yet Plaintiffs have produced no evidence of deliberate indifference on the part of Chief Coopersmith.  In neither the Complaint nor their briefs do Plaintiffs allege specific acts or omissions by Chief Coopersmith that would evidence the deliberate indifference required under <u>Brown</u>.  As such, summary judgment with respect to the <u>Monell</u> claim against Chief Coopersmith was granted.

BY THE COURT:

/s/ Michael M. Baylson

_____

Michael M. Baylson, U.S.D.J.

A:\Lieberman v. Marino 06-2745 - Monell Memorandum.wpd